# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

ADVANCE MAGAZINE PUBLISHERS, INC.,

    *Plaintiff*,

vs.

GATINI MICHELLE TINSLEY,

    *Defendant*.

Case No. 3:18-cv-13575-RHC-SDD

Hon. Robert H. Cleland
Magistrate: Stephanie Dawkins Davis

## DEFAULT JUDGMENT, ORDER, PERMANENT INJUNCTION, AND AWARD OF ATTORNEYS' FEES AND COSTS

Plaintiff ADVANCE MAGAZINE PUBLISHERS, INC. ("Advance" or "Plaintiff") filed a motion for a default judgment pursuant to Fed. R. Civ. P. 55(b)(2) against GATINI MICHELLE TINSLEY ("Tinsley" or "Defendant"). The Court has considered the motion and now makes the following findings of fact and conclusions of law.

Defendant has failed to appear or otherwise plead in this action. Because a Clerk's Entry of Default was requested and entered, Plaintiff's well-pleaded allegations are deemed admitted. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006).

Plaintiff Advance, through its unincorporated division Conde Nast ("Conde") is an international magazine publisher of some of the world's most prominent

magazines. Advance owns a number of trademark registrations for the marks ALLURE and VANITY FAIR related to its Allure and Vanity Fair publications. Advance owns Registration Nos. 4,614,715, 4,016,976, 2,808,011, 1,751,878, and 1,751,874 related to Allure, and Registration Nos. 3,835,420, 2,952,420, and 1,229,720 related to Vanity Fair. Advance has used its ALLURE mark in commerce since 1991, and its VANITY FAIR mark in commerce since 1982.

Defendant Tinsley has repeatedly and habitually impersonated employees of Plaintiff's magazines in order to secure goods and services at Plaintiff's detriment. Defendant registers domain names containing Plaintiff's marks and then, using email addresses based on those domains, pretends to be a writer for at least Plaintiff's Allure publication. Defendant does this in order to secure product samples from consumer goods providers who believe Defendant will profile those products in Plaintiff's publications. Defendant has done this on multiple occasions despite receiving demand letters from Plaintiff and despite a WIPO panel that ruled against her. Defendant in fact has no relationship with Allure or any other Advance magazine or entity.

After Plaintiff Advance filed this lawsuit, Defendant Tinsley evaded personal service of process on seven different occasions, and service by certified mail, return receipt requested, and delivery restricted to the addressee on three different occasions. On Plaintiff Advance's third attempt to serve her by certified mail, return

receipt requested, and delivery restricted to the addressee, Defendant Tinsley—either herself or through another individual—called counsel for Plaintiff and pretended to be someone else named "Katrina" to avoid service of process and obstruct further service attempts. Counsel learned of the deception when she realized the phone number used by "Katrina" was the very same phone number used by Defendant in a YouTube video Defendant uses to promote her journalism experience.

Plaintiff Advance sets forth the following counts in the Complaint:

- Count I: Federal Trademark Infringement Under 15 U.S.C. § 1114
- Count II: False Designation of Origin and Unfair Competition Under 15 U.S.C. § 1125
- Count III: Dilution Under 15 U.S.C. § 1125(c)
- Count IV: Federal Cyberpiracy Under 15 U.S.C. § 1125(d)
- Count V: Trademark Infringement and Unfair Competition Under Michigan Common Law

Once default has been entered, all of plaintiff's well-pleaded allegations are deemed admitted. *Rohn v. Commercial Recovery Systems, Inc.*, No. 13-10780, 2013 WL 6195578, at *3 (E.D. Mich. Nov. 26, 2013). Plaintiff ADVANCE has established the elements of the claims for each of the five counts asserted in the Complaint.

**Count I**

Claims for federal trademark infringement under 15 U.S.C. § 1114, false designation of origin and unfair competition under 15 U.S.C. § 1125, and trademark infringement and unfair competition under Michigan common law are examined using the same factors, with the likelihood of confusion being the touchstone of the claims. *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 604-05 (6th Cir. 1991); *Vision Information Technologies, Inc. v. Vision IT Services*, 156 F. Supp. 870, 879 (E.D. Mich. 2016). The likelihood of confusion analysis directs the Court to evaluate the following eight factors:

> (1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the defendant's intent in selecting the mark; and (8) likelihood of expansion of the product line.

*Audi AG v. D'Amato*, 469 F.3d 534, 542-43 (6th Cir. 2006) (citing *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186-90 (6th Cir. 1988)).

Plaintiff Advance's ALLURE and VANITY FAIR marks are strong. Plaintiff's ALLURE and VANITY FAIR marks are associated with its Allure and Vanity Fair publications, which have an audience of tens of millions of people worldwide. Plaintiff's marks have been used in commerce for over 30 years. Neither Allure nor Vanity Fair are commonly used phrases for marketing or advertising purposes. Plaintiff's marks are associated with significant goodwill. This factor favors a finding of likely confusion.

Defendant Tinsley is claiming to offer Plaintiff Advance's services. Thus, the services at issue are not merely similar but identical. When Defendant poses as a writer for Plaintiff's Allure publication, she falsely claims to offer Allure's services. This factor strongly favors a finding of actual confusion.

The similarity between marks is determined by viewing the marks in their entireties, not merely by comparing individual features. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997). Courts analyze pronunciation, appearance, and verbal translation of the marks. *Cosmetic Dermatology & Vein Centers of Downriver, P.C. v. New Faces Skin Care Centers, Ltd.*, 91 F. Supp. 2d 1045, 1053 (E.D. Mich. 2000). Here, the domain names registered by Defendant Tinsley directly incorporate the exact wording of Plaintiff's ALLURE and VANITY FAIR marks. This factor strongly favors a finding of actual confusion.

"The existence of evidence of actual confusion is highly probative of trademark confusion." *Audi AG v. D'Amato*, 381 F. Supp. 2d 644, 661 (E.D. Mich. 2005). One instance of actual confusion may support a finding of likely confusion. *Daddy's Junky Music Stores*, 109 F.3d at 284. Here, at least one product provider—Take Two Cosmetics—was actually confused and corresponded with Defendant believing she was an Allure writer. (ECF No. 1 at ¶ 33, ECF No. 1 at Ex. H.) She only realized her error when Defendant suspiciously requested another package of

product samples. (*Id.*) But for this second request, Take Two's confusion may have continued. This factor also favors a finding of likely confusion.

"Confusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the [goods] he is buying to assume nonetheless that the seller is affiliated with or identical to the other party." *Daddy's Junky Music Stores*, 109 F.3d at 286. While consumers seeking Plaintiff Advance's services may be careful and knowledgeable, because Defendant Tinsley's domain names include Plaintiff's registered marks, providers and consumers are likely to assume that Defendant is affiliated with Plaintiff, when she is not. This factor also favors a finding of likely confusion.

If a defendant selects a mark with "intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Daddy's Junky Music Stores*, 109 F.3d at 286. Direct evidence of intent is unnecessary, and use of a protected mark coupled with knowledge of its protection supports a finding of intent. *Id.* Importantly, "extensive advertising and long-term use of a protected mark can create a presumption that the alleged infringer knew of the protected mark." *Id.* It may be presumed Defendant Tinsley knew of Plaintiff Advance's marks when she deliberately elected to use them in her domain names because Plaintiff's ALLURE and VANITY FAIR marks are associated with publications reaching tens of millions of people, and have been used in commerce for many

6

decades. Defendant's knowledge is further supported by her affirmative misrepresentation of herself as an associate of Advance's Allure publication. This factor strongly favors a finding of likely confusion.

Collectively, relevant factors support a finding of likely confusion sufficient to hold Defendant Tinsley liable for trademark infringement under the Lanham Act.

**Counts II and V**

Because there is a likelihood of confusion, Plaintiff Advance prevails on Counts II and V of its Complaint as well.

**Count III**

To prevail on a claim for trademark dilution under 15 U.S.C. § 1125(c) of the Lanham Act, a plaintiff must establish that its trademark "is (1) famous and (2) distinctive, and that defendant's use of the mark (3) was in commerce, (4) began after the plaintiff's mark became famous, and (5) caused dilution of the distinctive quality of the plaintiff's mark." *Ford Motor Co. v. Launch Tech. Co. Ltd.*, No. 17-12906, 2018 WL 1089276, *16 (E.D. Mich. Feb. 26, 2018).

For reasons mentioned in considering Counts I, II, and V, Plaintiff Advance's ALLURE and VANITY FAIR marks are famous and distinctive. Defendant Tinsley used Plaintiff's ALLURE and VANITY FAIR marks in commerce by registering domain names containing those marks and at least concerning Allure, using them to

secure samples of personal care products for her own gain. This occurred well after Plaintiff's marks became famous.

Section 1125(c)(1) of the Lanham Act protects marks from dilution by tarnishing, which occurs where "the similarity between a mark or trade name and a famous mark . . . harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2). As Defendant Tinsley incorporated Plaintiff's exact marks into her registered domain names and falsely represents herself as a writer for Plaintiff's publications, each instance of her behavior damages valuable goodwill attached to Plaintiff's marks.

Plaintiff Advance prevails on Count III.

**Count IV**

To succeed on a "cybersquatting" claim under the ACPA, a Plaintiff must establish:

> (1) that it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) defendants' domain names are identical or confusingly similar to, or in the case of famous marks, dilutive of, plaintiff's mark; and (4) defendants used, registered, or trafficked in the domain name (5) with a bad faith intent to profit.

*DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004).

For reasons discussed in considering Counts I, II, and V, Plaintiff Advance's ALLURE mark is valid, famous, and distinctive. Additionally, Defendant Tinsley's registered domain names (Alluremagazines.com and Alluremags.com) and emails

8

incorporate the ALLURE mark. Concerning whether a defendant has a bad faith intent to profit, courts consider a wide breadth of factors under 15 U.S.C. § 1125(d)(1)(B). The statutory factors are non-limiting, and are not a "substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit." *Lucas Nursery and Landscaping, Inc. v. Grosse*, 359 F.3d 806, 811 (6th Cir. 2004).

Defendant Tinsley has no trademark or intellectual property rights of her own in any of her registered domain names and those domain names do not include her legal name. There is no indication that Defendant has used the domain names for a bona fide offering of services or any other noncommercial or fair use. And, Defendant has attempted to intentionally divert providers of personal care products away from Plaintiff Advance's legitimate online presence in order to secure sample products for herself under the false pretense that she is associated with Allure. Defendant has done this multiple times despite receiving multiple demand letters.

Plaintiff Advance prevails on Count IV.

**Injunctive Relief**

The Court may grant injunctive relief to prevent future violations of the Lanham Act. *See* 15 U.S.C. § 1116(a). Plaintiff Advance must demonstrate: (1) it has suffered irreparable injury, (2) there is no adequate remedy at law considering

9

the balance of hardships between the parties, and (3) that the public interest favors issuance of an injunction. *Audi AG*, 469 F.3d at 550 (citing *eBay Inc., v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). Sixth Circuit law "holds that no particular finding of likelihood of . . . irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Circuit City Stores, Inc.*, 165 F.3d at 1056. Irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from infringement or unfair competition. *Id.*

The Court finds that Plaintiff Advance has suffered an irreparable injury: there is a likelihood of confusion in the marketplace resulting from Defendant Tinsley's continued fraudulent use of its ALLURE and VANITY FAIR marks. While Defendant Tinsley appears not to currently own any domains containing Plaintiff's VANITY FAIR mark, her previous registration of www.Vanityfairmags.com, course of conduct concerning Plaintiff's ALLURE mark, and her course of conduct in this action more generally strongly suggests she may re-register the www.Vanityfairmags.com domain or a similar variant causing additional damage to Plaintiff's reputation and goodwill. The potential for future harm means that there is "no adequate remedy at law." *Audi AG*, 469 F.3d at 550. In addition, it does not appear that Defendant would face any legitimate hardship in restraining from trademark infringement, while Plaintiff Advance faces the possibility of damage to

its goodwill and risk to its reputation. *American Auto Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 758 (E.D. Mich. 2014). Lastly, preventing customer confusion and fraud is in the public's interest. *Audi AG*, 469 F.3d at 550; *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 905 (9th Cir. 2002). Therefore, Plaintiff is entitled to permanent injunctive relief as ordered below.

**Transfer of Domain Alluremagazines.com to Plaintiff Advance**

Under the ACPA, a Court may order transfer of the domain names at issue to Plaintiff. 15 U.S.C. § 1125(d)(1)(C); *Misterovich v. Burggraf*, No. 13-cv-1221, 2014 WL 7010801, *3 (W.D. Mich. Dec. 10, 2014). Here, particularly in light of Defendant Tinsley's repeated affirmative misrepresentations and use of multiple email addresses associated with domain names containing Plaintiff's ALLURE mark, Plaintiff requests that the domain name Alluremagazines.com be transferred to Advance Magazine Publishers, Inc.

**Maximum Damages Under the Anticybersquatting Consumer Protection Act**

The ACPA permits Plaintiff to recover either (1) actual damages and profits or (2) an award of statutory damages in an amount not less than $1,000 and not more than $100,000 "per domain name, as the court considers just." 15 U.S.C. § 1117(d); *Misterovich*, 2014 WL 7010801, at *3. It is well-established that the ACPA statutory damages provision "serves not only to afford restitution and reparation for injury, but also to discourage wrongful conduct." *Ford Motor Co. v. Cross*, 441 F. Supp.

11

2d 837, 853 (E.D. Mich. 2006). A defendant's "intent and behavior are the foremost consideration." *CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1102 (D. Colo. 2014).

Defendant Tinsley's egregious and repeated fraudulent conduct entitles Plaintiff Advance to the maximum amount in statutory damages—$100,000—for Defendant's use of the Alluremagazines.com domain name and another $100,000 for her use of Alluremags.com. Defendant Tinsley incorporated the entirety of Plaintiff's ALLURE mark into her registered domain names, persisted in her use of Plaintiff's ALLURE mark, registered additional domain names despite receiving multiple cease and desist letters and being admonished by the WIPO, and there is a likelihood of confusion. While Defendant Tinsley never attempted to sell the domain names back to Plaintiff Advance, she instead ignored Plaintiff *entirely*, never once acknowledging Plaintiff's concerns. Defendant persisted in her deception even after Plaintiff filed this suit by repeatedly evading service, going so far as to either pretend to be someone else ("Katrina") or enlist another person to deliberately throw off Plaintiff's service attempts.

Collectively, the totality of the circumstances reveal a pattern of behavior by Defendant replete with "wrongful conduct," which must be "discourag[ed]" by an award of maximum damages. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d at 853. These egregious circumstances support an award of maximum damages in the

amount of $200,000 for Defendant's violations of the ACPA in connection with her use of Alluremagazines.com and Alluremags.com.

**Entitlement to Attorneys' Fees and Costs**

The Lanham Act allows a court "in exceptional cases [to] award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Under Sixth Circuit law, an award of attorneys' fees may be appropriate where the offending conduct was "malicious, fraudulent, willful, or deliberate." *Audi AG*, 469 F.3d at 551. Significantly, a "bad faith" finding under the ACPA can support a determination that a case is "exceptional" and an award of attorneys' fees. *Audi AG*, 469 F.3d at 551 (internal citation omitted). A prevailing party is also entitled to costs. 15 U.S.C. § 1117(a); Fed. R. Civ. P. 54(d).

Defendant Tinsley's conduct prior to and after the filing of this action entitles Plaintiff Advance to reasonable attorneys' fees and costs in this case. Defendant repeatedly and fraudulently impersonated a staff writer for Plaintiff's Allure magazine using domain names containing Plaintiff's ALLURE mark in order to obtain samples of personal care products for her own benefit. Defendant Tinsley's persistence—and registration of additional domain names—after receiving multiple demand letters from Plaintiff and despite an adverse WIPO ruling is indicative of willfulness. And, Defendant Tinsley's deception continued even after Plaintiff filed this lawsuit as evidenced by her repeated evasion of service of process. It culminated

13

when—no stranger to impersonation—either Defendant herself or another enlisted by her pretended to be someone else in order to throw off Plaintiff's process servers.

**Quantification of Attorneys' Fees and Costs**

Plaintiff seeks recovery of $40,243.75 in attorneys' fees and $2,619.09 in costs.

To determine whether fees are reasonable, courts conduct a "lodestar" analysis. *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997). First, courts calculate the lodestar figure by multiplying the reasonable number of hours worked by a reasonable hourly fee. *See Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013). Then, they exclude any "excessive, redundant, or otherwise unnecessary hours" and adjust the sum to reflect the result obtained. *U.S. Structures, Inc.*, 130 F.3d at 1193.

Among factors considered by Michigan courts are: "(1) the professional standing and experience of the attorneys; (2) the skill, time, and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." *Crawley v. Schick*, 48 Mich. App. 728, 737 (Mich. App. 1973). Prevailing market rates in the relevant community are also relevant. *Career Agents Network, Inc. v. Careeragentsnetwork.biz*, 722 F. Supp. 2d 814, 823, 835 (E.D. Mich. 2010).

Concerning costs, court filing fees and fees expended in connection with service of process are recoverable. *See, e.g.*, *FenF, LLC v. Shenzhen FromUfoot, Ltd.*, No. 16-12616, 2018 WL 3729073, *4 (E.D. Mich. Aug. 6, 2018) (court filing fees and service fees). Fees for investigative work are also recoverable. *See, e.g.*, *North Atlantic Operating Co. v. Scott*, No. 16-12076, 2018 WL 4659000, *8 (E.D. Mich. Sep. 28, 2018). And at least one court in this District has found the cost of computer legal research recoverable. *See, e.g.*, *Havard v. Wayne Cty.*, No. 06-10449, 2012 WL 3583324, *4 (E.D. Mich. Aug. 20, 2012). Costs for photocopying are also recoverable. *Id.*

Here, Plaintiff is entitled to attorneys' fees and costs in this exceptional case. The time and effort incurred by the Honigman LLP lawyers assigned to this matter was reasonable considering the amounts billed. At all times, supervising attorneys assigned work to the lowest-billing capable attorney, and applied their own higher billing rates sparingly and judiciously. Defendant Tinsley increased the complexity of this case first by ignoring multiple demand letters and then by failing to respond to the Complaint and deliberately and repeatedly evading service of process. This led to additional attorney and investigative work that would have been unnecessary had Defendant Tinsley participated in this lawsuit. Prevailing market rates also support the finding that Plaintiff's attorneys' fees are reasonable. The rates for the Honigman LLP lawyers are all consistent with the ranges of hourly billing rates

15

contained within the State Bar of Michigan's 2017 Economics of Law Practice Report and the 2017 Report of the Economic Survey put out by the American Intellectual Property Law Association (AIPLA).

Concerning costs, Plaintiff's filing, photocopying, and Westlaw research costs are all recoverable. Plaintiff's $1,579.35 in fees associated with investigative work and service of process are also recoverable. This is appropriate because the majority of the costs are the result of Tinsley's serial evasion of service.

**IT IS HEREBY ORDERED:**

Pursuant to Fed. R. Civ. P. 65, Defendant Tinsley, any agents of Defendant Tinsley, and those persons in active concert or participation with Defendant Tinsley who receive actual notice of this Permanent Injunction, by personal service or otherwise, are permanently enjoined and restrained from:

(1) infringing on Plaintiff's ALLURE and VANITY FAIR marks, or any colorable similar variants thereof;

(2) using, in commerce, the ALLURE or VANITY FAIR marks, or any colorable similar variants thereof;

(3) registering any domain names or using any email addresses comprised of any of Plaintiff's trademarks, or any colorable similar variants thereof;

(4) using any false designation of origin or false description (including, without limitation, any letters, symbols, or designs similar to the ALLURE or

VANITY FAIR marks) that can, or are likely to, lead members of the trade or public to believe that any services sold or offered by Defendant are in any manner associated, connected, sponsored, approved, or authorized by Plaintiff;

    (5)    unfairly competing with Plaintiff;

    (6)    engaging in unfair and deceptive trade practices; and

    (7)    injuring Plaintiff's business reputation.

**IT IS FURTHER ORDERED:**

Pursuant to 15 U.S.C. § 1125(d)(1)(C), Defendant Tinsley, and the domain registrant GoDaddy Inc. that Defendant Tinsley used to register Alluremagazines.com, are to transfer Alluremagazines.com to Plaintiff Advance Magazine Publishers, Inc.

**IT IS FURTHER ORDERED:**

Pursuant to 15 U.S.C. § 1117(d), that Defendant Tinsley is ordered to pay statutory damages to Plaintiff in the amount of $200,000.

**IT IS FURTHER ORDERED:**

Pursuant to 15 U.S.C. § 1117(a), that Defendant Tinsley is required to pay Plaintiff Advance $40,243.75 in attorneys' fees and $2619.09 in costs.

  **SO ORDERED**.                        *s/Robert H. Cleland*
                                            HON. ROBERT H. CLELAND
                                            UNITED STATES DISTRICT JUDGE

Dated: March 19, 2019